**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| SOUTHERN ILLINOIS UNIVERSITY SCHOOL OF MEDICINE, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 18-cv-1092 |
| U.S.DEPARTMENT OF LABOR, R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF LABOR | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS U.S. DEPARTMENT OF LABOR AND R. ALEXANDER ACOSTA'S
ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND
PETITION FOR JUDICIAL REVIEW**

Defendants United States Department of Labor and R. Alexander Acosta, in his official

capacity as Secretary of Labor (collectively, "Defendants"), by and through their undersigned

counsel, answer Plaintiff Southern Illinois University School of Medicine's ("Plaintiff" or

"University") First Amended Complaint.

All of Defendant's answer, admissions, denials, and statements of lack of knowledge are

based upon the contents of the administrative record.

## NATURE OF THE CASE

The University seeks judicial review of the Administrative Review Board of the

Department of Labor's ("ARB") untenable Final Decision and Order ("Final Order") that

improperly calculated the required wage for former University employee Dr. Sajida Ahad ("Dr.

Ahad") under the Immigration and Nationality Act's ("INA") H-1B program. During her

employment with the University as an Assistant Professor of Surgery/Bariatric Surgeon, Dr.

1

Ahad, like physicians across the country, received compensation based partially on her productivity. Among other errors, the ARB found, without substantial evidence to support its finding, that the University failed to pay Dr. Ahad the required wage under the INA by comparing Dr. Ahad to physicians who, among other things, were significantly more productive and had different experience and qualifications than Dr. Ahad. On review, the University respectfully requests that this Court invalidate the Final Order because it is: in excess of statutory authority; not in accordance with the law; unsupported by substantial evidence; arbitrary and capricious; and an abuse of discretion.

**Response:**

The first sentence of this paragraph contains Plaintiff's characterization of its First Amended Complaint and conclusions of law, to which no response is required. To the extent a response is deemed required, Defendants admit that the ARB issued a Final Order affirming an administrative law judge's ("ALJ") decision that the University failed to pay Dr. Ahad the required wage under the H-1B statute and regulations, but deny Plaintiff's characterizations of the ARB's order.  As to the second sentence, Defendants lack sufficient knowledge or information to admit or deny whether "physicians across the country" are compensated based on their productivity; the remainder of the sentence is denied except to admit that the clinical compensation component of Dr. Ahad's salary was based on the amount of Relative Value Units ("RVUs") credited to her during the relevant time period, which the University deemed indicative of her productivity.  As to the third sentence, Defendants admit that the ARB affirmed the ALJ's conclusion that the University failed to pay Dr. Ahad the required wage and that the ALJ determined the required wage using comparator physicians, but Defendant denies other

allegations in this sentence. The last sentence consists of a request for relief and conclusions of law, to which no response is required; to the extent a response is deemed necessary, the allegations are denied, and Defendants deny Plaintiff is entitled to the requested relief or to any relief whatsoever.

## JURISDICTION AND VENUE

1.      Jurisdiction exists pursuant to 28 U.S.C. Section 1331, 5 U.S.C. Section 702 of the Administrative Procedures Act, and 20 C.F.R. Section 655.850. This is an action for review of a Final Order issued by the ARB (Case Nos. 16-064 and 16-065) in relation to the administrative law judge's decision (ALJ Case No. 2015-LCA-023). *See* Final Order attached hereto as Exhibit 1.

**Response:**

The first sentence is a conclusion of law to which no response is required. The second sentence is a characterization of this action to which no response is required.

2.      Venue is proper under 5 U.S.C. Section 703 and 28 U.S.C. Section 1391(e)(1)(A). A substantial part of the alleged events or omissions occurred in the judicial district of the United States District Court for the Central District of Illinois and it is where the University resides.

**Response:**

The first sentence is a conclusion of law to which no response is required. Defendants admit the allegations in the second sentence.

## PARTIES

3.      Southern Illinois University School of Medicine is an academic division of Southern Illinois University with its principal place of business in Springfield, Illinois.

**Response:**

Upon information and belief, Defendants admit these allegations.

4.      The Department of Labor ("DOL") is an agency of the United States government and a proper defendant pursuant to 5 U.S.C. Section 703.

**Response:**

Admit.

5.      R. Alexander Acosta, in his official capacity as Secretary of Labor ("the Secretary"), is a proper defendant pursuant to 5 U.S.C. Section 703.

**Response:**

Admit.

## FACTUAL ALLEGATIONS

### Dr. Ahad's Background

6.      Dr. Ahad is a Pakistani national.

**Response:**

Admit.

7.      Dr. Ahad attended Aga Khan Medical College in Karachi, Pakistan from 1993 to 1998.

**Response:**

Admit.

8.      In 2001, Dr. Ahad entered the United States on a J-1 visa to begin a five-year general surgery residency program at the Mayo Clinic in Rochester, Minnesota.

**Response:**

Admit.

9.      Dr. Ahad completed her residency at the Mayo Clinic in 2006.


**Response:**

Admit.

10.     In 2006, Dr. Ahad began a two-year minimally invasive surgery fellowship at the University of Washington in Seattle, Washington.

**Response:**

Admit.

## Dr. Ahad's Complaint to the Wage and Hour Division

11.     In 2007, the University advertised an opening for an Academic Bariatric Surgeon position in the Annals of Surgery, which is a monthly peer-reviewed medical journal of surgical science and practice. In addition, the University advertised the position on the American Society for Bariatric Surgery's website.

**Response:**

Defendants admit that in 2007, the University advertised an opening for an Academic Bariatric Surgeon position in the Annals of Surgery; Defendants lack knowledge or information sufficient to admit or deny the characterization of the Annals of Surgery. Defendants lack knowledge or information sufficient to admit or deny allegations in the second sentence except to admit that the Form ETA 9089 the University filed on behalf of Dr. Ahad stated that the University had advertised the position on the American Society of Bariatric Surgery's website in May 2007.

12.     According to the American Society for Metabolic and Bariatric Surgery, bariatric surgical procedures cause weight loss by restricting the amount of food the stomach can hold or by a combination of both gastric restriction and malabsorption. Most weight loss surgeries are performed using minimally invasive techniques (laparoscopic surgery).

**Response:**

Defendants lack knowledge and information sufficient to admit or deny these allegations.

13.     Because Dr. Ahad wanted to stay in the Midwest to be with her husband, she inquired about the University's open position.

**Response:**

Deny except to admit that Dr. Ahad wanted to stay in the Midwest because her husband was already employed at the University, and as such called the University, as well as other surrounding programs, to inquire about employment opportunities.

14.     Dr. Ahad interviewed for the position in February, 2008.

**Response:**

Admit.

15.     The University offered Dr. Ahad the position primarily because of her completion of the minimally invasive surgery fellowship at the University of Washington.

**Response:**

Defendants admit that Dr. Gary Dunnington, former chair of the University's Department of Surgery, stated in a Declaration that Dr. Ahad was hired "to fill [a] need [for a bariatric surgeon] based primarily on the fact that she had completed a fellowship in minimally invasive

surgery." Defendants lack knowledge or information sufficient to know whether Dr.

Dunnington's statement accurately reflects the reasons University decided to hire Dr. Ahad.

16.     Dr. Ahad accepted the position and began working at the University in or around

July 2008 on an O-1 visa that was valid through July 2011.

**Response:**

Admit.

17.     Upon her hire, Dr. Ahad became the first fellowship-trained bariatric surgeon at

the University. She remained the only fellowship-trained bariatric surgeon during her

employment with the University. While Dr. Ahad worked for the University, no other physician

at the University offered laparoscopic gastric bypass surgery.

**Response:**

Admit.

18.     On August 17, 2009 the University filed a "PERM" application for Permanent

Labor Certification. Pursuant to applicable regulations, the University specifically recruited for

the position of Assistant Professor of Surgery/Bariatric Surgeon, and the application listed the

job title as Assistant Professor of Surgery/Bariatric Surgeon. The PERM application provided

that the successful candidate for the position must have completed a fellowship in laparoscopic

surgery or laparoscopic bariatric surgery.

**Response:**

The first sentence is admitted.  As to the second sentence, Defendants admit that the

University advertised in the "Annals of Surgery" specifically for an academic bariatric surgeon

and that the University's Application for Permanent Employment Certification listed the job title

as Assistant Professor of Surgery/Bariatric Surgeon; Defendants lack knowledge and information sufficient to admit or deny whether the University otherwise "specifically recruited" for the position of Assistant Professor of Surgery/Bariatric Surgeon. The third sentence is admitted.

19.     In June 2011, the University filed a Labor Condition Application for the position of Assistant Professor of Surgery/Bariatric Surgeon on behalf of Dr. Ahad with the Department of Labor and an I-129 Petition for H-1B Nonimmigrant Worker with the Department of Homeland Security.

**Response:**

Admit.

20      In June 2011, the University also submitted a letter to the U.S. Citizenship and Immigration Services ("USCIS") in conjunction with the H-1B petition submitted on Dr. Ahad's behalf. The letter provided, in part, that Dr. Ahad would be responsible for teaching students "general surgery and bariatric surgery as well as general medical care" in her position as an Assistant Professor of Surgery/Bariatric Surgeon.

**Response:**

Admit.

21.     Dr. Ahad was employed by the University in H-1B status from July 2, 2011 until she resigned her position on March 21, 2014.

**Response:**

Defendants deny that Dr. Ahad was employed in H-1B status from July 2, 2011 and affirmatively state that the date of her employment in H-1B status began on July 7, 2011; Defendants admit other allegations in this paragraph.

**Dr. Ahad's Compensation and Compensation Agreement**

22.     The University requires its Assistant Professors with a General Surgery Division appointment to enter into a Compensation Agreement ("the Agreement") at the outset of employment.

**Response:**

Admit.

23.     Dr. Ahad entered into the Agreement on August 10, 2011.

**Response:**

Defendants admit that Dr. Ahad entered into a compensation agreement with SIU Physicians & Surgeons, Inc. ("SIUPS") on August 10, 2011, and had also done so in each of the three previous years, and that her compensation agreements had the same form as those of other physicians at the University.  Defendants deny that she entered into "the Agreement" to the extent that this suggests that Ahad's compensation amounts were identical to those of other physicians at the University.

24.     Pursuant to the Agreement, Dr. Ahad's compensation was comprised of two components: (1) academic base compensation paid by the University and (2) clinical compensation paid by SIU HealthCare.

**Response:**

Defendants admit that pursuant to each of her annual compensation agreements, Dr. Ahad's compensation comprised two components: (1) academic base compensation paid by the University, and (2) clinical compensation paid by SIUPS, which is also known as SIU

HealthCare. Defendants deny that she entered into "the Agreement" to the extent that this suggests that Ahad's compensation amounts were identical to those of other physicians at the University.

25.    The University paid the academic base, which was guaranteed, on a monthly basis.

**Response:**

Admit.

26.    Dr. Ahad's academic base salary was $125,000 for all times relevant to her allegations.

**Response:**

Admit.

27.    The clinical compensation component of Dr. Ahad's salary was based on productivity.

**Response:**

Defendant deny the allegation based on the vagueness of the term "productivity." Defendants affirmatively state that Dr. Ahad's clinical compensation salary component was based on the amount of Relative Value Units ("RVUs") credited to a physician during the relevant time period, which the University and/or SIUPS deemed indicative of a physician's productivity.

28.    The University determined productivity by the amount of Relative Value Units ("RVUs") recorded by a physician during the relevant time period. RVUs are based upon defined "Current Procedural Terminology" ("CPT") codes, which are standards that medical

professionals use to document and report medical, surgical, radiology, laboratory, anesthesiology, and evaluation and management services.

**Response:** Defendants admit that the University and/or SIUPS determined productivity by the amount of Relative Value Units ("RVUs") credited to a physician during the relevant time period. The allegation in the second sentence that RVUs are based upon CPT codes is admitted. Defendants lack information or knowledge sufficient to admit or deny the second sentence's characterization of CPT codes, but admit that the ALJ took official notice that "'CPT' refers to 'Current Procedural Terminology,' the American Medical Association's copyrighted medical nomenclature used to report medical procedures and services under public and private health insurance programs."

29.     CPT codes are used by insurers to determine the amount of reimbursement that a medical professional will receive for services provided.

**Response:** Defendants admit that the amount of RVUs associated with a service is based on CPT codes, but lack information or knowledge sufficient to admit or deny the other allegations in this paragraph.

30.     For the first two years of her employment, Dr. Ahad received a guaranteed $125,000 for the clinical component of her compensation.

**Response:**

Defendants admit that for the first two years of her employment, Dr. Ahad received $125,000 for the clinical component of her compensation, but deny that such compensation was "guaranteed." While the University and SIUPS characterized these amounts as "guaranteed," when surgeons such as Dr. Ahad finished the guarantee period, SIUPS would compare the dollar

value of the RVUs the surgeon generated during the guarantee period to what the surgeon had been paid, and the surgeon would have to pay back SIUPS any deficit. Dr. Ahad had to pay back amounts following her guarantee period.

31. After two years and during her H-1B employment, Dr. Ahad's clinical compensation was comprised of the amount of RVUs she generated versus what she had been paid.

**Response:**

Deny. Defendants affirmatively state that after two years and during her H-1B employment, Dr. Ahad received clinical compensation that was based on the amount of RVUs she generated during that time period.

32. In 2014, Dr. Ahad submitted a complaint to the Wage and Hour Division of the Department of Labor ("the Division") via an ESA Form WH-4 alleging that the University failed to pay her the actual wage for her position as Assistant Professor of Surgery/Bariatric Surgeon during her H-1B employment status.

**Response:**

Defendants admit that in 2014, Dr. Ahad submitted a complaint to the Wage and Hour Division ("Division") via an ESA Form WH-4 alleging that the University had, inter alia, failed to pay her the higher of the prevailing or actual wage during her employment there. Defendants deny that Dr. Ahad specified her job title in the Form WH-4.

33. The Division conducted an H-1B investigation and issued a decision on August 4, 2015.

**Response:**

Admit.

34.     The Division determined that the University had committed no violation and that Dr. Ahad was properly paid the actual wage for her position.

**Response:**

Admit.

## Proceedings Before the Administrative Law Judge

35.     On August 14, 2015, Dr. Ahad appealed the Division's decision and requested an administrative hearing.

**Response:**

Admit.

36.     An ALJ held a de novo formal hearing on January 5, 2016.

**Response:**

Admit.

37.     Following the hearing, the ALJ reversed the decision of the Division and found that the University violated the INA by failing to pay Dr. Ahad the required wage under the INA.

**Response:**

Admit.

38.     The ALJ issued an order requiring the University to pay Dr. Ahad back pay in the sum of $223,884.27, which consisted of $80,001.52 for the alleged underpayment of Dr. Ahad's academic base compensation and $143,822.75 for the alleged underpayment of Dr. Ahad's clinical compensation during her H-1B employment. In addition, the University was ordered to

pay prejudgment compound interest on the back pay owed and post-judgment interest until the award was satisfied in full.

**Response:**

Admit.

39.　　As a basis for the decision that Dr. Ahad was not paid the required wage, the ALJ improperly concluded that certain University physicians were comparators to Dr. Ahad.

**Response:**

Paragraph 39 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants admit that as a basis for the decision that Dr. Ahad was not paid the required wage, the ALJ concluded that certain University physicians were comparators to Dr. Ahad.  Defendants deny that the ALJ's conclusion was improper.

40.　　Dr. Ahad, however, was far less productive than certain of the supposed comparator physicians.

**Response:**

Defendants deny the allegations because the term "productive" is vague and undefined.

41.　　In some instances, Dr. Ahad's comparators were twice as productive as Dr. Ahad during the same relevant time period.

**Response:**

Defendants deny the allegations because the term "productive" is vague and undefined.

42.　　In addition, Dr. Ahad had different experience, qualifications, education, job responsibilities, and specialized knowledge, among other differences, than the supposed comparator surgeons.

**Response:**

Admit that Dr. Ahad's experience, qualifications, education, job responsibilities, and specialized knowledge may not have been precisely identical to those of the five comparator physicians cited by the ALJ, but affirmatively state that any differences were immaterial and failed to negate the ALJ's finding that the five comparator physicians had "similar experience and qualifications" and "substantially the same duties and responsibilities" as Dr. Ahad for the purposes of 20 C.F.R. § 655.731(a)(1).

43.     The ALJ also improperly failed to consider the University's argument that certain deductions from Dr. Ahad's compensation were authorized under the INA, including the wage disparities caused by certain leaves and vacations, which decreased Dr. Ahad's productivity.

**Response:**

Paragraph 43 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations in this paragraph except to admit that the ALJ rejected the University's arguments that certain deductions from Dr. Ahad's compensation were authorized under the INA.

**Proceedings Before the Administrative Review Board**

44.     Both parties appealed the ALJ's ruling.

**Response:**

Admit.

45.     On appeal, the ARB affirmed the ALJ's conclusion that the University failed to pay Dr. Ahad the required wage. The ARB affirmed the ALJ's decision in all respects, including the order of $223,884.27 in back pay.

**Response:**

Admit.

46.     No further administrative remedies are available to the University.

**Response:**

Paragraph 46 contains a conclusion of law, to which no response is required.

47.     This is an action under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, for judicial review of the Final Order issued on behalf of the ARB on January 29, 2018.

**Response:**

This paragraph consists of a characterization of this civil action, to which no response is required.

48.     The Final Order requires the University to pay back pay and other remedies for alleged underpayment of Dr. Ahad under the INA's H-1B visa program.

**Response:**

Admit.

## COUNT I: DECLARATORY JUDGMENT

49.     The University incorporates by reference the allegations contained in paragraphs 1- 48 of this Complaint as if set forth herein.

**Response:**

Defendants incorporate by reference their responses to paragraphs 1 through 48.

50.     The Immigration and Nationality Act's ("INA") H-1B program allows employers in the United States to hire nonimmigrant workers in specialty occupations on a temporary basis.

**Response:**

Admit.

51.     The INA requires employers who participate in the H-1B program to seek approval of the DOL by filing a LCA, which includes the employer's attestation that it will pay the H-1B nonimmigrant worker the "required wage."

**Response:** Paragraph 51 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants respectfully refer the Court to the INA and its regulations, and specifically 8 U.S.C. § 1182 and 20 C.F.R. § 665.730 and 665.731, for a full and accurate statement of the relevant statutes and regulations.

52.     More specifically, the employer must confirm to both the DOL and the Department of Homeland Security that it will pay the employee the higher of either the prevailing wage for "the occupational classification in the area of employment" or the actual wage. 8 U.S.C. § 1182 (n) (1) (A) (i) (I) & (II).

**Response:**

Paragraph 52 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants respectfully refer the Court to the INA and its regulations, and specifically 8 U.S.C. § 1182 and 20 C.F.R. § 665.730 and 665.731, for a full and accurate statement of the relevant statutes and regulations.

53.     The actual wage is defined as "the wage rate paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question." 20 C.F.R. § 655.731(a) (1).

**Response:**

Paragraph 53 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants respectfully refer the Court to 20 C.F.R. § 665.731(a)(1) for a full and accurate statement of the relvantrelevant regulation.

54.     In order to determine whether an individual has similar experience and qualifications, the following factors may be considered: "[e]xperience, qualifications, education, job responsibility and function, specialized knowledge, and other legitimate business factors." 20 C.F.R. § 655.731(a) (1).

**Response:**

Paragraph 54 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants respectfully refer the Court to 20 C.F.R. § 665.731(a)(1) for a full and accurate statement of the relevant regulation.

55.     For purposes of the INA, legitimate business factors are those that it is reasonable to conclude are necessary because they conform to recognized principles or can be demonstrated by accepted rules and standards.

**Response:**

Paragraph 55 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants respectfully refer the Court to 20 C.F.R. § 665.731(a)(1) for a full and accurate statement of the relevant regulation and  the definition of the term "legitimate business factors."

56.     The "specific employment in question" prong is determined by assessing whether employees have "substantially the same duties and responsibilities" as the H-1B employee. 20 C.F.R. § 655.731 (a) (1). If such employees exist, the actual wage shall be the amount paid to

these other employees. (Id.) However, in the event that "no such other employees exists at the place of employment, the actual wage shall be the wage paid to the H-1B employee by the employer." (Id.)

**Response:**

Paragraph 56 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants respectfully refer the Court to 20 C.F.R. § 665.731(a)(1) for a full and accurate statement of  the relevant regulation.

57.     Dr. Ahad was paid the actual wage for her position because no other bariatric surgeons were employed by the University and no other physicians performed substantially the same duties and responsibilities as Dr. Ahad.

**Response:**

Paragraph 57 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

58.     The ARB erroneously adopted the ALJ's conclusion that the specific employment in question was "Assistant Professor with an appointment to the Division of General Surgery."

**Response:**

Paragraph 58 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants admit that the ALJ found that the specific employment in question was "Assistant Professor with an appointment to the Division of General Surgery" and the ARB affirmed the ALJ's decision in all respects.  Defendants deny that these decisions were erroneous.

59.     The University paid Dr. Ahad the required wage under the INA and relevant regulations.

**Response:**

Paragraph 59 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

60.     The ARB also erred, both in law and fact, in finding certain physicians whose compensation factored into the actual wage were "comparators" to Dr. Ahad.

**Response:**

Paragraph 60 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants admit that the ARB affirmed the ALJ's finding that certain physicians whose compensation factored into the actual wage were "comparators" to Dr. Ahad but deny that it erred in doing so.

61.     As stated, the supposed comparators did not have the same duties and responsibilities as Dr. Ahad.

**Response:**

Paragraph 61 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations and affirmatively state that  although  Dr. Ahad's duties and responsibilities may not have been precisely identical to those of the five comparator physicians cited by the ALJ, any differences were insufficient to negate the ALJ's finding that the five comparator physicians had "substantially the same duties and responsibilities" as Dr. Ahad for the purposes of 20 C.F.R. § 655.731(a)(1).

62.     The supposed comparators did not possess similar experience and qualifications as Dr. Ahad. Specifically, among other things, the supposed compactors were not similar to Dr. Ahad with respect to job responsibility and legitimate business functions and they did not have the same specialized knowledge.

**Response:**

Paragraph 62 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations, and affirmatively state that while Dr. Ahad's experience and qualifications may not have been precisely identical to those of the five comparator physicians cited by the ALJ – for example, none of the five shared her specific fellowship training and subspecialty – any differences were insufficient to negate the ALJ's finding that the five comparator physicians had "similar experience and qualifications" and "substantially the same duties and responsibilities" as Dr. Ahad for the purposes of 20 C.F.R. § 655.731(a)(1).

63.     For example, the supposed comparators did not have the same legitimate business functions as it related to taking trauma calls.

**Response:**

Paragraph 63 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants admit that Dr. Ahad only briefly took trauma call during her employment with the University, while at least some of the comparator physicians took trauma call more regularly.  However, this distinction was insufficient to negate the ALJ's finding that the five comparator physicians had "similar experience and qualifications"

and "substantially the same duties and responsibilities" as Dr. Ahad for the purposes of 20 C.F.R. § 655.731(a)(1).

64. Dr. Ahad was less productive than certain of the supposed "comparator" physicians. In some instances, Dr. Ahad's "comparators" were twice as productive as Dr. Ahad during the same relevant time period

**Response:**

Defendants deny these allegations because the term "productive" is vague and undefined.

65. For example, Dr. Ahad took certain leaves and extended vacations.

**Response:**

Defendants admit that Dr. Ahad took certain leaves and vacations, but deny that this caused her to be less productive than other surgeons; the University failed to offer any evidence that Dr. Ahad took more vacations than other surgeons.

66. Further, as a matter of law, where compensation is based on productivity, such physicians cannot be "comparators" for the actual wage computation.

**Response:**

Paragraph 66 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations.

67. The ARB erroneously "blamed" the University for Dr. Ahad's lower compensation based on productivity and, in doing so, misapplied the law and made clearly erroneous factual findings.

**Response:**

Paragraph 67 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants admit that the ARB stated that "the ALJ noted a number of undisputed facts suggesting that the deductions from Ahad's compensation were unreasonable given that they were rooted in detrimental actions taken by the University." Defendants deny that the ALJ's findings on this issue, or the ARB's affirmance of the ALJ, were erroneous.

68.     Dr. Ahad had different experience, qualifications, education, job responsibilities, and specialized knowledge, among other differences, than the supposed "comparator" physicians.

**Response:**

Deny. The five comparator physicians cited by the ALJ had sufficiently "similar experience and qualifications" and had "substantially the same duties and responsibilities" as Dr. Ahad for the purposes of 20 C.F.R. § 655.731(a)(1).

69.     The ARB erroneously affirmed the ALJ's decision that the University failed to pay the required wage under the INA.

**Response:**

Paragraph 69 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants admit that the ARB affirmed the ALJ's decision that the University failed to pay the required wage under the INA, but deny that this affirmance was erroneous.

70.     The ARB erroneously awarded Dr. Ahad back pay.

**Response:**

23

Paragraph 70 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants admit that the ARB affirmed the ALJ's award of back pay, by deny that this award was erroneous.

71.     The ARB erroneously affirmed the Division's award of pre-judgment and post-judgment interest.

**Response:**

Paragraph 71 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants admit that the ARB affirmed the ALJ's award of damages to Dr. Ahad in all respects, including the ALJ's award of pre-judgment and post-judgment interest, but deny that this award was erroneous.

72.     The ARB's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**Response:**

Paragraph 72 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

73.     The ARB's decision is contrary to constitutional right, power, privilege, or immunity.

**Response:**

Paragraph 73 contains a conclusion of law, to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

74.     The ARB's decision is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

**Response:**

Paragraph 74 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

75. The ARB's decision is without observance of procedure required by law.

**Response:**

Paragraph 75 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

76. The ARB's decision is unsupported by substantial evidence.

**Response:**

Paragraph 76 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

The unnumbered sentence following Paragraph 76 is a request for relief, to which no response is required. To the extent a response is deemed necessary, Defendants deny Plaintiff is entitled to the requested relief or to any relief whatsoever.

## COUNT II: DECLARATORY JUDGMENT

77. The University incorporates by reference the allegations contained in paragraphs 1- 76 of this Complaint as if set forth herein.

**Response:**

Defendants incorporate by reference their responses to paragraphs 1 through 76.

78. The H-1B implementing regulations require the wage obligation to be paid to the employee, "cash in hand, free and clear, when due." 20 C.F.R. § 655.731 (c) (1).

**Response:**

Paragraph 78 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants respectfully refer the Court to 20 C.F.R. § 655.731(c)(1) for a full and accurate statement of the relevant regulation.

79. The regulations provide an exception for certain "authorized deductions," which can reduce the wage below the prevailing or actual wage without affecting the employer's compliance with the wage rate requirement.

**Response:**

Paragraph 79 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants respectfully refer the Court to 20 C.F.R. § 655.731(c)(9) for a full and accurate list of the H-1B regulations' "authorized deductions."

80. 20 C.F.R. § 655.731(c)(9)(ii) permits deductions that are "reasonable and customary in the occupation and/or area of employment," so long as such deductions are also made against the wages of non H-1B employees.

**Response:**

Paragraph 80 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants respectfully refer the Court to 20 C.F.R. § 655.731(9)(ii) for a full and accurate statement of the relevant regulation.

81. The University's compensation plan, and Dr. Ahad's resulting lower compensation based on lower productivity, are both reasonable and customary in the practice of medicine.

**Response:**

Paragraph 81 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

82. The ARB erroneously, and in violation of due process, declined to consider the University's argument that certain deductions were authorized, including the lower compensation based on Dr. Ahad's lower productivity, vacations, and other leaves.

**Response:**

Paragraph 82 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants admit that the ARB concluded that the ALJ properly disallowed unauthorized deductions from Dr. Ahad's wages, and deny other allegations.

83. The ARB erroneously awarded Dr. Ahad back pay.

**Response:**

Paragraph 83 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants admit that the ARB affirmed the ALJ's award of back wages to Dr. Ahad and deny that this award was erroneous.

84. The ARB erroneously affirmed the Division's award of pre-judgment and post-judgment interest.

**Response:**

Paragraph 84 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants admit that the ARB affirmed the ALJ's award of damages in all respects, including the ALJ's award of pre-judgment and post-judgment interest and deny that such award was erroneous.

85. The ARB's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**Response:**

Paragraph 85 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

86. The ARB's decision is contrary to constitutional right, power, privilege, or immunity.

**Response:**

Paragraph 86 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

87. The ARB's decision is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

**Response:**

Paragraph 87 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

88. The ARB's decision is without observance of procedure required by law.

**Response:**

Paragraph 88 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph

89. The ARB's decision is unsupported by substantial evidence.

**Response:**

Paragraph 89 contains a conclusion of law, to which no response is required. To the extent a response is deemed required, Defendants deny the allegations in this paragraph.

The unnumbered sentence following Paragraph 89 is a request for relief, to which no response is required. To the extent a response is deemed necessary, Defendants deny Plaintiff is entitled to the requested relief or to any relief whatsoever.

## PRAYER FOR RELIEF

The remainder of the Amended Complaint contains Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, Defendants deny Plaintiff is entitled to the requested relief or to any relief whatsoever.

Defendants deny all other allegations set forth in the Amended Complaint not otherwise admitted or qualified above.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against Defendants for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The decisions by the ARB and ALJ were supported by substantial evidence, and were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law.

## THIRD AFFIRMATIVE DEFENSE

Defendant asserts that it has, or may have, additional affirmative defenses that are not known to it at this time. Defendant specifically preserves these and other affirmative defenses, including those required by Fed. R. Civ. P. 8 and 12.

WHEREFORE, having fully answered Plaintiff's First Amended Complaint, Defendants pray for a judgment dismissing the Complaint with prejudice and for such further relief as the Court may deem just.

Dated: September 7, 2018

Respectfully Submitted,

Defendants United States Department of Labor and R. Alexander Acosta, in his official capacity as Secretary of Labor

S/Hilary W. Frooman
By:  Hilary W. Frooman
     No. 6180241
     Assistant United States Attorney
     United States Attorney's Office
     318 S. Sixth Street
     Springfield, IL 62701
     Telephone: (217) 492 4450
     Email: hilary.frooman@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

David W. Gearhart                           Aaron R. Gelb
Lewis Rice LLC                              Conn, Maciel, Carey LLP
Ste 2500                                    16TH Floor
600 Washington Avenue                       318 W. Adams Street
St. Louis, MO 63101                         Chicago, IL 60606

Jerina D. Phillips
Lewis Rice LLC
Ste 2500
600 Washington Avenue
St. Louis, MO 63101


s/Hilary W. Frooman
HILARY W. FROOMAN, Reg. #61802