## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SOUTHERN ILLINOIS UNIVERSITY SCHOOL OF MEDICINE, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-cv-01092 |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF LABOR, et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Plaintiff Southern Illinois School of Medicine's (SIUSM) Motion for Summary Judgment (d/e 28) and Defendant United States Department of Labor's (the "Department") Cross-Motion for Summary Judgment (d/e 30).  The Court finds that the Department acted neither arbitrarily nor capriciously in finding that SIUSM did not pay Dr. Sajida Ahad the required wage under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 & 1182, et seq. (INA), and its implementing regulations, 20 C.F.R. § 655, Subparts H & I.  Therefore, the Department's action is

affirmed, and its Cross-Motion for Summary Judgment (d/e 30) is GRANTED.  Plaintiff's Motion for Summary Judgment (d/e 28) is, accordingly, DENIED.

## I.    STATUTORY AND REGULATORY FRAMEWORK

The Immigration and Nationality Act, 8 U.S.C. §§ 1101 & 1182, et seq. (INA), and its implementing regulations, 20 C.F.R. § 655, Subparts H & I provide the employment and wage standards for H-1B non-immigrant workers.  Non-immigrant H-1B workers are temporary workers who lawfully enter the United States to perform "specialty occupations," including medical professionals who are required to attain "a bachelor's or higher degree in the specific specialty," 8 U.S.C. § 1101(a)(15)(H)(i)(b1), and occupy roles requiring "a body of specialized knowledge."  Id. at § 1184(i)(3).  The INA delegates the enforcement of its wage standard provisions to the Department of Labor.  Id. at § 1182(n).

An employer of an H-1B non-immigrant must certify to the Secretary of Labor in a Labor Conditions Application (LCA) that the employer will pay the H-1B worker a required wage during the employee's H-1B employment.  8 U.S.C. § 1182(n)(1)(A)(i).  Under the INA, the required wage is the greater of "the actual wage level

paid by the employer to all other individuals with similar experience

and qualifications for the specific employment in question, or the

prevailing wage level for the occupational classification in the area

of employment."  Id.  The parties do not contest that the only issue

in the present case is whether SIUSM paid Dr. Ahad the "actual"

wage because the wages SIUSM did pay to Dr. Ahad exceeded the

prevailing wage.  Pl.'s Mot. for Summ. J. (d/e 28) p. 23, n.4; Def.'s

Cross-Mot. for Summ. J. (d/e 30) p. 63.

The "actual" wage under the INA is determined using factors

set out in 20 C.F.R. 655.731(a)(1).  That regulation provides:

> The actual wage is the wage rate paid by the employer to
> all other individuals with similar experience and
> qualifications for the specific employment in question. In
> determining such wage level, the following factors may be
> considered: Experience, qualifications, education, job
> responsibility and function, specialized knowledge, and
> other legitimate business factors. "Legitimate business
> factors," for purposes of this section, means those that it
> is reasonable to conclude are necessary because they
> conform to recognized principles or can be demonstrated
> by accepted rules and standards. Where there are other
> employees with substantially similar experience and
> qualifications in the specific employment in question—
> i.e., they have substantially the same duties and
> responsibilities as the H–1B nonimmigrant—the actual
> wage shall be the amount paid to these other employees.
> Where no such other employees exist at the place of
> employment, the actual wage shall be the wage paid to
> the H–1B nonimmigrant by the employer.

Id.

An "aggrieved party," i.e., an H-1B non-immigrant who believes she was not paid the required wage, may file a complaint with the Administrator of the Wage and Hour Division of the Department of Labor, which issues a determination of the allegations.  8 U.S.C. § 1182(n)(2); 20 C.F.R. §§ 655.800, 655.805, 655.815.  The parties may challenge the Administrator's determination before an Administrative Law Judge (ALJ).  Id.; 20 C.F.R. § 655.820.  Parties may appeal the ALJ's decision to the Administrative Review Board (ARB), to which the Secretary of the Department of Labor has delegated authority to issue the Department's final decisions.  20 C.F.R. 655.845; 77 Fed. Reg. 69378, § 5(c)(26).

## II.    LEGAL STANDARD

This cause seeking review of a final agency action under the Administrative Procedures Act, 5 U.S.C. § 704 ("APA"), is before the Court on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In agency review cases under the APA, the Court "sits as an appellate tribunal" so "the usual summary judgment standard does not apply."  UPMC Mercy v. Sebelius, 793

F.Supp.2d 62, 67 (D.D.C. 2011).  This is because "it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, and the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id. (cleaned up).  "Cross-motions for summary judgment provide an appropriate procedural vehicle for deciding the legal significance of the evidence set forth in the administrative record and for evaluating the administrative decision." Abraham Lincoln Mem'l Hosp. v. Sebelius, No. 10-3122, 2011 WL 2293233, at *4 (C.D. Ill. June 8, 2011) (internal quotations and citations omitted).  Therefore, the following facts are taken from the administrative record and the agency's findings.

### III.   BACKGROUND AND PROCEDURAL HISTORY

Dr. Sajida Ahad was employed as a physician by SIUSM beginning in 2008.  R-1818.  Because Dr. Ahad was born in Pakistan, she was initially employed pursuant to an I-129 Petition for a Non-immigrant Worker in O-1 status which was filed on her behalf by SIUSM.  R-1818.  Dr. Ahad remained employed under the O-1 visa until June 2011, when SIUSM filed a Labor Conditions

Application (LCA) with the Secretary of Labor pursuant to the INA. In the LCA, SIUSM stated that Dr. Ahad would be employed as an Assistant Professor of Surgery/Bariatric Surgeon, would be responsible for teaching both general and bariatric surgery, and would be paid an annual salary of $250,000.  R-1818.  Dr. Ahad received approval for an H-1B visa which remained valid from July 2011 through July 2014.  Id.

While employed at SIUSM, Dr. Ahad performed teaching, research, and service duties.  Her teaching duties involved "instruction of medical students in the disciplines of general surgery and bariatric surgery as well as general medical care," and her research duties were not constrained to any specific area.  R-1818.  Her service duties involved clinical practice work and accounted for the majority of her time.  Id.  While she was focused on cultivating a bariatric program, Dr. Ahad's service duties also included performing various procedures involving "anything in the belly.  R-1819.  She also took trauma call while in O-1 visa status from 2008 through 2010, when she was asked to step away from the trauma call because she was no longer needed.  Id.  Lastly, Dr. Ahad was offered a choice to extend her service duties to fill in for

another physician's breast surgery practice.  Id.  Dr. Ahad declined that offer, citing her already heavy workload and an uncertain future in that practice given the post would be temporary until SIUSM could find a replacement breast surgeon.  Id.

Compensation from SIUSM to its Assistant Professors within the General Surgery Division, such as Dr. Ahad, consisted of two parts: an academic base and a clinical component.  R-1821.  The clinical component varied and was based on the specific productivity of the clinical work performed by individual physicians, while the academic base was paid monthly.  Id.  Over the course of Dr. Ahad's employment with SIUSM while in H-1B status, she received $338,789.60 in academic base pay and $253,676.64 in clinical compensation.

Dr. Ahad filed a complaint to the Wage and Hour Division of the Department of Labor in 2014, alleging SIUSM did not pay her the required wage under the INA during her H-1B status.  R-4–13. The Administrator of the Wage and Hour Division issued a determination on August 4, 2015 that SIUSM did not underpay Dr. Ahad or violate the INA.  R-1.  On August 14, 2015, Dr. Ahad appealed the Administrator's determination to an ALJ and

requested an administrative hearing.  R-14–16.  After the hearing on January 5, 2016, the ALJ issued a decision on April 13, 2016 reversing the Administrator and finding that SIUSM did violate the INA by underpaying Dr. Ahad as compared to other SIUSM physicians.  R-1815–1834.  The ALJ ordered SIUSM to pay Dr. Ahad back pay of $223,884.27, including $80,001.52 in academic base pay and $143,822.75 in clinical compensation.  On May 12, 2016, both SIUSM and Dr. Ahad appealed the ALJ's decision.  R-1835 & R-1845.  The ARB affirmed the ALJ's decision on January 29, 2018, issuing the final agency decision that SIUSM violated the INA by not paying Dr. Ahad the required wage.  R-2319.  SIUSM now appeals the final agency decision by the Department of Labor announced through the ARB, arguing that the agency's decision was contrary to the INA and in violation of the APA.

## IV.  ANALYSIS

Under the APA, agency actions, findings, and conclusions may be set aside where such actions, findings, or conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or not supported by substantial evidence from the administrative record.  5 U.S.C. § 706(2); Roadway Exp.,

Inc. v. U.S. Dep't of Labor, 612 F.3d 660, 664 (7th Cir. 2010).  An

agency's actions are "arbitrary and capricious if the agency has

relied on factors which Congress has not intended it to consider,

entirely failed to consider an important aspect of the problem,

offered an explanation for its decision that runs counter to the

evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.

Co., 463 U.S. 29, 43 (1983).  An agency's actions are not arbitrary

or capricious "as long as the agency's path may be reasonably

discerned."  Mt. Sinai Hosp. Medical Center v. Shalala, 196 F.3d

703, 708 (7th Cir. 1999) (internal quotations and citations omitted).

    "The arbitrary and capricious standard is highly deferential,

and even if [the Court] disagree[s] with an agency's action, [the

Court] must uphold the action if the agency considered all of the

relevant factors and [the Court] can discern a rational basis for the

agency's choice."  Israel v. U.S. Dep't of Agric., 282 F.3d 521, 526

(7th Cir. 2002).  Therefore, the Court gives substantial deference to

the agency's factual findings and final decision.  Gimbel v.

Commodity Futures Trading Comm'n, 872 F.2d 196, 199 (7th Cir.

1989); <u>Mt. Sinai Hosp. Med. Ctr.</u>, 196 F.3d at 708.; <u>Davis v. Vilsack</u>, 2013 WL 6865425, at *2 (C.D. Ill. Dec. 31, 2013) ("Because this is a deferential standard, an inference may not be set aside simply because the opposite conclusion is more reasonable.").

The legal issue in this case—which the Department considered at the administrative level through the ALJ and ARB—is whether SIUSM paid Dr. Ahad the required wage under the INA.  Plaintiff SIUSM argues that the ALJ and ARB decisions holding that SIUSM failed to pay Dr. Ahad the required wage were arbitrary and capricious because SIUSM's productivity-based compensation system is a piece-rate system akin to an hourly wage and permissible under the INA.  SIUSM also argues that the decisions below were unsupported by substantial evidence in the record and used improper comparator physicians when determining the actual wage owed to Dr. Ahad.  The Department, in response, argues that the comparator physicians were proper; that SIUSM forfeited its piece-rate argument by not raising it below; that, even if the productivity-based system was permissible, SIUSM deprived Dr. Ahad of opportunities to be productive; and that the Department's decision is consistent with the congressional intent behind the INA.

First, the Court finds that SIUSM forfeited its piece-rate compensation argument by not raising it below. Parties forfeit arguments not raised during the administrative process. Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 763–65 (2004); United States v. L.A. Truck Lines, Inc., 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it had opportunity for correction in order to raise issues reviewable by the courts."). To avoid forfeiting an argument, parties must "actually argue[]" the issue in the administrative proceeding. Nyandwi v. Garland, 15 F.4th 836, 841 (7th Cir. 2021) (citing Duarte-Salagosa v. Holder, 775 F.3d 841, 846 (7th Cir. 2014)). An argument is "actually argued" if the agency had been put "on notice" that the party attempted to challenge the agency's decision based on that argument. Id. (citing Hamdan v. Mukasey, 528 F.3d 986, 991 (7th Cir. 2008)); see also Kleissler v. U.S. Forest Serv., 183 F.3d 196, 202 (3rd Cir. 1999) ("[W]e hold that the claims raised at the administrative appeal and in the federal complaint must be so similar that the district court can ascertain that the agency was on

notice of, and had an opportunity to consider and decide, the same claims now raised in federal court.").

SIUSM's arguments below did not put the Department "on notice" of SIUSM's uniform piece-rate argument.  SIUSM argued below only that Dr. Ahad's lower wages resulted from authorized deductions in accordance with SIUSM's productivity-based compensation system.  Throughout its briefs before the ALJ and the ARB, SIUSM focused its arguments on the assertion that Dr. Ahad was paid less because deductions in wages were authorized pursuant to 20 C.F.R §§ 655.731(c)(2) and (c)(9)(ii).  R-1808–12, 1853–57, 2027–32.  SIUSM argued before the ALJ that "Dr. Ahad received periodic deductions after her second year of employment based upon her []productivity" and that "[t]his type of deduction is reasonable and customary in her occupation."  R-1811–12.  SIUSM then argued before the ARB that "20 C.F.R. § 655.731(c)(9)(ii) permits deductions that are 'reasonable and customary in the occupation and/or area of employment.'"  R-1854.  In each instance, SIUSM relied on the "authorized deductions" sections of the INA's implementing regulations—specifically, 20 C.F.R §§ 655.731(c)(2) and (c)(9)(ii)—for the proposition that Dr. Ahad

received less pay because those wages were legally deducted from her pay as a result of her reduced productivity.  R-1810, 1854, 1857.  The ALJ rejected those arguments, holding that the alleged deductions were not for the principal benefit of Dr. Ahad as required by the INA.  R-1828–29.

In its briefing before this Court, however, SIUSM takes a different tack and does not mention either § 655.731(c)(2) or 655.731 (c)(9)(ii).  See generally Pl.'s Mot. (d/e 28); Pl.'s Consol. Reply (d/e 33).  Instead, SIUSM now relies on 20 C.F.R. § 655.731(b)(1)(V)(A)'s mention of allowable H-1B compensation under piece-rate systems, such as hourly wages.  See Pl.'s Mot. (d/e 28) at p. 28, and Pl.'s Consol. Reply (d/e 33) at p. 46.  SIUSM argues that its productivity-based system is uniformly applied and should be considered an allowable piece-rate compensation system under § 655.731(b)(1)(V)(A).  But nowhere in SIUSM's briefing below before the ALJ or ARB did SIUSM mention piece-rate systems or § 655.731(b)(1)(V)(A).  Accordingly, the Court cannot find that the ALJ and the ARB were on notice of or given an opportunity to consider and decide whether SIUSM's productivity-based compensation

system could be considered an allowable piece-rate system under the INA or 20 C.F.R. § 655.731(b)(1)(V)(A).

SIUSM also contends that its current piece-rate argument was preserved because SIUSM used in its briefs below words and phrases akin to "productivity" and because the ALJ and ARB discussed of the productivity-based system in their decisions regarding SIUSM's authorized-deduction argument.  See Pl.'s Consol. Reply (d/e 33) at p. 45.  But mere words and phrases used while advancing one argument cannot preserve a separate argument which happens to use the same words and phrases. Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 553–54 (1978) ("administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that "ought to be" considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated"); cf. Pub. Citizen, 541 U.S. at 764–65 (holding that particular objections must be raised before an agency in order to preserve an argument for suit).  Therefore, the

Court concludes that SIUSM has forfeited its piece-rate argument under 20 C.F.R. § 655.731(b)(1)(V)(A) by not raising it below.

SIUSM's next objection to the administrative decisions below is the use of certain other doctors employed by SIUSM as comparators to Dr. Ahad and the wages she was paid.  The INA states that the required wage to be paid to H-1B non-immigrant specialty workers be the greater of either the prevailing wage, which is not an issue in this case, or "the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question."  8 U.S.C. § 1182(n)(1)(A)(i)(I).  SIUSM argues that none of the comparators used by the ALJ and ARB in determining the actual wage owed to Dr. Ahad occupied sufficiently similar roles to Dr. Ahad's specific employment in question, rendering the ALJ and ARB decisions arbitrary and capricious.  SIUSM's contentions against similarity center on the uniqueness of Dr. Ahad's title as an Assistant Professor of Surgery/Bariatric Surgeon, her performance of bariatric surgeries, her absence from the trauma team during her H-1B employment, and this Court's prior decision to decertify Dr. Ahad's other collective action in Ahad v. Bd. of Trs. of S. Illinois

Univ., 2019 WL 1433753, at *1 (C.D. Ill. Mar. 29, 2019) (hereinafter
Ahad).

   As a threshold matter, the ALJ's and ARB's decision to use
certain physicians as comparators below was not precluded or
contrary to the law because of the Court's prior decision in Ahad.
In Ahad, the Court evaluated whether, under the Fair Labor
Standards Act (FLSA), Dr. Ahad's collective action should be
decertified because she and the other opt-in plaintiffs were not
similarly situated.  See Ahad, 2019 WL 1433753, at *3.  The Court
noted that "[t]he FLSA does not detail the process a court should
employ to determine whether potential class members are 'similarly
situated.'" Id. (internal citations omitted).  Instead, the Court relied
on other cases considering the certification process under the FLSA
to determine that the other opt-in plaintiffs in Ahad were not
similarly situated to Dr. Ahad because of "the actual duties
performed by each of the plaintiffs on a day-to-day basis." Id. at *4.
As a result, the Court determined that decertification was required
under the FLSA.  Id. at *3–*4.

   In contrast, the INA and its implementing regulations in this
case do detail the factors agencies should consider to determine

whether other employees of the H-1B non-immigrant's employer are similarly situated.  <u>See</u> 20 C.F.R. § 655.731(a)(1).  Moreover, the regulations caution that the similarly situated distinction "cannot be established through differing job titles or minor variations in day-to-day work assignments where other individuals with similar experience and qualifications perform substantially the same duties and responsibilities as the H-1B non-immigrant."  57 Fed. Reg. 1316-01.  Therefore, the analysis for determining whether physicians are similarly situated for comparison under the INA and its implementing regulations is different than under the FLSA such that the Court's prior decision in <u>Ahad</u> is neither directly on point nor controlling.

Turning to the analysis under the INA employed by the ALJ and ARB, the Court finds that the agency's use of comparator Drs. A, B, E, I, and K was not arbitrary and capricious.  Title 20 C.F.R. § 655.731(a)(1) states that, in determining the 'actual wage' to be paid under the INA, "the following factors may be considered: Experience, qualifications, education, job responsibility and function, specialized knowledge, and other legitimate business factors."  Additionally, the Department's Supplementary Guide to its

Rules and Regulations go on to clarify that, when considering the job responsibilities and functions of the H-1B non-immigrant worker and her comparators, "the job title alone is not dispositive of this issue.  While like job titles presume like jobs with similar job duties, responsibilities and functions, this presumption may be rebutted with information regarding actual duties, responsibilities and functions.  Further, different job titles alone are meaningless if the job duties, responsibilities and functions are substantially the same."  57 Fed. Reg. 1316-01.

In determining that Drs. A, B, E, I, and K were similarly situated, the ALJ considered each of the § 655.731(a)(1) factors. The ALJ considered in detail the similarity between each physician's education, experience, and qualifications—R-1822–24—and each physician's job responsibilities and duties while at SIUSM—R-1824. The ALJ recounted testimony that each physician performed surgeries in areas outside of their respective subspecialty and each had additional teaching and research duties.  R-1824–25.  The ALJ relied on exhibits presented by both SIUSM and Dr. Ahad and the testimony presented at the administrative hearing before finding that "the specific employment in question is an Assistant Professor

with an appointment to the Division of General Surgery." R-1824–25. While SIUSM's argues that Dr. Ahad's title of Assistant Professor of Surgery/*Bariatric Surgery* renders the ALJ's specific employment determination contrary to the law—Pl.'s Mot. (d/e 28) p. 32 (emphasis in Motion)—the record evidence considered by the ALJ shows that comparator physicians occupied roles in which their "job duties, responsibilities and functions [were] substantially the same" despite the minor difference in titles. 57 Fed. Reg. 1316-01. Specifically, the ALJ noted that none of the comparator physicians were confined to practicing within only their subspecialty while employed in the Division of General Surgery. R-1825. Therefore, the ALJ's use of Drs. A, B, E, I, and K as comparator physicians was not contrary to the law and is affirmed. See Israel, 282 F.3d at 526 (In review under the APA, the Court "must uphold the action if the agency considered all of the relevant factors and [the Court] can discern a rational basis for the agency's choice.").

Finally, SIUSM asserts that the ALJ did not consider the comparator physicians' roles in taking trauma call. However, the ALJ first considered Dr. Ahad's own testimony that she had taken

trauma call until she was instructed to stop.  R-1826 (citing Dep. of Dr. Ahad, R-670).  The ALJ then considered the testimony of four other doctors' regarding Dr. Ahad's role on the trauma team before finding that "SIUSM did not produce persuasive evidence to counter" Dr. Ahad's own testimony.  R-1826.  SIUSM's arguments urging the Court to find differently amount to requests to reweigh the evidence presented to the agency, which would be outside the realm of this Court's review under the APA.  See UPMC Mercy, 793 F.Supp.2d at 67 ("it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, [while] the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.").  The Court instead finds that the ALJ did rely on substantial evidence in the record in concluding that Dr. Ahad took trauma call and that her ability to earn higher pay during her H-1B employment was impacted by the instruction she received to stop taking trauma call.

## V.    CONCLUSION

The Department of Labor, through the ALJ and ARB, relied on substantial record evidence to reach a conclusion that was neither

contrary to the law nor arbitrary and capricious.  <u>See</u> 5 U.S.C. §

704.  Therefore, Plaintiff Southern Illinois University School of

Medicine's Motion for Summary Judgment (d/e 28) is DENIED, and

Defendant Department of Labor's Consolidated Cross-Motion for

Summary Judgment (d/e 30) is GRANTED.  The ALJ's and ARB's

orders are AFFIRMED, and SIUSM is ORDERED to pay Dr. Ahad

$223,884.27 in back wages.  The Clerk is directed to enter

judgment for the Defendant and against the Plaintiff.  This case is

closed.

**IT IS SO ORDERED.**
**ENTERED:  November 23, 2021**
**FOR THE COURT**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**